[Civ. No. 7078.   Second Appellate District, Division One.—February 1, 1932.]

K. LUNDEEN CORPORATION (a Corporation), Appellant, v. VERNON J. BARLOW, Respondent.

Raphael Dechter for Appellant.

George L. Greer and S. L. Carpenter for Respondent.

TAPPAAN, J., *pro tem.*—In this action plaintiff seeks to recover for broker's commissions upon the exchange of real estate. Defendant had judgment below and plaintiff appeals. The cause of action as alleged in the complaint is based upon the terms of a certain exchange agreement entered into between defendant and one Jacobberger, and the commission claimed is that fixed in this agreement. The answer sets up the exchange agreement *in haec verba* and then alleges fraud on the part of Jacobberger as to the terms of the mortgage upon the property he sought to exchange. There are also alleged in defense, a release, that agreement is without consideration, a failure of consideration, and a release of a part of the amount claimed. From the findings it would appear that the judgment was predicated upon the theory of fraud, and a resulting rescission of the agreement of exchange.

Plaintiff's first contention is that the court's findings, as to fraud, are wholly unsupported by the evidence. From an examination of the record, it appears that there is sufficient evidence to support all material findings of the court.

The negotiations preceding the signing of the exchange agreement were held in the office of plaintiff, where defendant had desk room, and covered a period of some six or eight weeks. Defendant testifies that Jacobberger informed him that the mortgage upon the farm he wished to exchange, had three years to run. Lundeen, who was present during some of the conversations, says that Jacobberger stated that the mortgage had at least two or three more years to go. Jacobberger's version is that he said the mortgage was one for five years and had run over three. That at the time the exchange agreement was signed by the parties, a question as to the date of the mortgage arose and that

Jacobberger said he did not know the exact date but it was over a year. Plaintiff, the agent, suggested that the words "as of record" be used, which was done. Defendant thereafter signed escrow instructions specifying that the mortgage should be "due approximately three years after this date". This part of the instructions was, thereafter, at the request of plaintiff, modified to read two years. The mortgage in fact had only fourteen months to run at the time of the signing of the agreement, and defendant had notice of this fact for the first time when he read the abstract furnished by Jacobberger in the escrow. Defendant upon discovering this fact promptly notified Jacobberger that he declined to go forward with the transaction. Jacobberger then requested defendant to sign an instruction providing for the return of $3,500 he had caused to be deposited in the escrow. This instruction, as presented to defendant contained a clause agreeing to redeposit the money when the escrow-holder "is in a position to comply with her original instructions as thereafter amended". Defendant struck out this clause and Jacobberger, making use of the instruction as so modified, withdrew the money from escrow, and notified the escrow-holder not to deliver a note in the escrow to plaintiff. At a later date Jacobberger notified defendant that he had made no representation that the mortgage had two years or more to run and demanded that defendant complete the exchange. Taken in a light most favorable to plaintiff, the testimony presents a substantial conflict, and upon appeal the findings will not be disturbed. (*Johnston* v. *DeBock,* 198 Cal. 177 [244 Pac. 330]; 2 Cal. Jur., and cases cited.) "Upon these findings we must assume the existence of every fact necessary to their support which the trial court might have inferred from the evidence." (*Mooney* v. *Cyriacks,* 185 Cal. 70, 82 [195 Pac. 922, 927].)

Plaintiff's next contention is based upon the provision contained in section 1625 of the Civil Code, that a written contract supersedes all negotiations and stipulations concerning the matter between the parties. Inasmuch as the court found that there was fraud in the inception of the agreement this rule has no application. (*Darrow* v. *Houlihan,* 205 Cal. 771 [272 Pac. 1049].)

■ There is no merit in plaintiff's contention that the representation as to the term of the mortgage was not a material one and the case cited (*Darrow* v. *Houlihan, supra*), fails to sustain that position.

■ The fact of the fraud in the procuring of defendant's consent to the contract having been established, he had a right to rescind (Civ. Code, sec. 1689, subd. 1) and the contract was extinguished thereby (Civ. Code, sec. 1688). There is some evidence that Jacobberger acquiesced in this by the withdrawal of the money after the modification of the instruction. Plaintiff's contention that he became a party to the contract by accepting its terms and conditions would seem to be without justification in fact. His acceptance neither added to nor took away any of the obligations of the two contracting parties. As to them the transaction remained unchanged. If he were an interested party he would be bound by the rescission in any event. (Civ. Code, sec. 1689, subd. 1.) His rights under the contract are governed by section 1559 of the Civil Code which reads as follows: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Plaintiff's only rights are such as he may claim under the terms of the exchange agreement and he claims no other contract with defendant. The contract under which he claims recovery was rescinded before he attempted to collect his commissions, and his rights thereby terminated. In the case of *Lundeen* v. *Nowlin,* 20 Cal. App. 415 [129 Pac. 474], where a contract similar to the one here involved was in question, the court after quoting section 1559 of the Civil Code observes (p. 417): "This contract was not rescinded and undoubtedly upon default being made by either of the parties contracting in that regard a cause of action arose in favor of plaintiff." The court in *Stanton* v. *Carnahan,* 15 Cal. App. 527, at page 530 [115 Pac. 339, 340], says: "That part of the contract upon which the action is based was made expressly for the benefit of plaintiff, and under the provisions of section 1559, Civil Code, they were entitled to enforce the same at any time before the parties thereto rescinded it. If the parties had rescinded, then, under the provisions of said section, no recovery could be had. It may also be true that if, under the terms of the agreement, Carnahan's assent to the con-

tract was procured by fraud, such fact might be urged as a defense.''

Plaintiff cites a number of cases holding that a real estate broker employed to sell real property has earned his compensation when he has produced a purchaser able and willing to take the property on the terms proposed, or who has been accepted by his principal. In these cases it will be found that the broker's rights are saved to him under a contract existing between the broker and the party defendant. Here no such contract existed, and the contract under which plaintiff claims was terminated and extinguished before plaintiff attempted to enforce his alleged rights. (*Jennings* v. *Jordan,* 31 Cal. App. 335 [160 Pac. 576]; *Brion* v. *Cahill,* 34 Cal. App. 258 [165 Pac. 704]; *Stewart* v. *Bowie,* 43 Cal. App. 751 [185 Pac. 868]; *Houghton* v. *Kuehnrich,* 46 Cal. App. 469 [189 Pac. 457].) In the case of *Lind* v. *Huene,* 205 Cal. 569, at page 571 [271 Pac. 1087, 1088], the court, after citing the above cases, says: ''and more recently in *Houghton* v. *Kuehnrich,* 46 Cal. App. 469 [189 Pac. 457], wherein it is said that when there is no separate enforceable contract of employment with the broker and the owner's promise to pay the broker a commission is found only in the contract entered into between the owner and the prospective purchaser, if the purchaser should fail to carry out his undertaking to purchase, the owner is released from his promise to pay the broker a commission. In such a case, if the wrongful abandonment of the contract is consented to, the whole contract falls, the provision relating to the agent's commission with the rest.'' The court found, in the case above referred to, there was such an authorization in a separate contract. In the case at bar there was no such separate agreement and the contract had been terminated prior to plaintiff's attempt to enforce it.

Plaintiff's last contention is, that by the introduction in evidence of a letter signed by plaintiff and reducing the amount of his commission under the contract, that defendant became liable for the amount named in the letter. The letter was delivered long before defendant's discovery of the fraud and his rescission of the contract. It might have limited plaintiff's right under the contract, in the event he

had prevailed, but created no new right other than such as plaintiff already had under the contract.

For the above reasons the judgment appealed from is affirmed.

Conrey, P. J., and Houser, J., concurred.