[S. F. No. 15049.  In Bank.—July 1, 1935.]

GEORGE A. DAVISON et al., Appellants, v. THOMAS J. FINNERAN et al., Respondents.

T. N. Harvey and Alfred H. McAdoo for Appellants.

Derby, Sharp, Quinby & Tweedt for Respondents.

PRESTON, J.—In this cause a judgment was rendered in favor of defendants and cross-complainants Finneran, from which plaintiffs and cross-defendants Davison appealed.

The appeal involves no legal question of importance. The sole issue in reality is that of sufficiency of the evidence to support the findings and judgment. This is true because, under the view of the somewhat conflicting evidence adopted by the trial court, the three points made by appellant, which might otherwise be meritorious, are untenable. The evidence points directly to the correctness of the trial court's conclusions and upon the record before us, we have no hesitancy at all about affirming the judgment.

On May 8, 1929, plaintiffs and defendants entered into an agreement for the exchange of real property, pursuant to which plaintiffs conveyed to defendants a ranch in Kern County, valued at $15,250, subject to first trust deed securing an indebtedness of $2,000. Defendants assumed the $2,000 encumbrance; they gave plaintiffs their note for $8,750, secured by second trust deed on the ranch; they paid plaintiffs $500 cash and they conveyed to plaintiffs real property in West Hollywood, subject to a $2,000 mortgage which plaintiffs assumed.

In August, 1930, plaintiffs brought this action to recover from defendants on their $8,750 note. Defendants answered and also filed a cross-complaint alleging rescission of the entire contract on the ground of material fraudulent representation by plaintiffs inducing the exchange. The trial court found in favor of the allegations of the cross-complaint and gave judgment accordingly, decreeing a rescission of the transaction and providing monetary substitutes to be paid in case complete rescission could not at this time be had. As above stated, plaintiffs appealed. From the findings and the evidence, the following appears:

During the negotiations for making the exchange and prior to execution of the agreement, the encumbrances then existing on the ranch were discussed. Defendants asked plaintiff George A. Davison the date of maturity of the $2,000 indebtedness and he positively represented and asserted to defendants that it would not mature and become due and payable for more than two years thereafter. Defendants informed him that unless this was so, they could not enter into any agreement. Plaintiff repeated the assertion several times during the negotiations. The fact was that the trust deed

was mature, due, and payable at the very time said plaintiff represented that its maturity date was more than two years away.

On May 14, 1929, defendants went into possession of the ranch. In August, 1929, according to their evidence, upon visiting the bank, they discovered for the first time that within the next two months they would be required to take up said $2,000 indebtedness. On August 8th defendant T. J. Finneran wrote plaintiff George A. Davison about this and about other details of the exchange which had not been adjusted to his satisfaction. The following is an excerpt from said plaintiff's reply of August 13th:

"In regard to the trust deed against the property it certainly is news to me that this is to fall due soon. When I bought the place I was given to understand that this paper had four years to run, this would make it come due in Mar. 1931. I wish you would look into this, if there has been any dates or anything changed on this paper it was done without my sanction. I can truthfully say I know nothing of any change made."

On August 15th said defendant again wrote said plaintiff, saying: "I have looked up the facts in connection with the $2000 mortgage and find that it was put on the place on March 5, 1925 and expired on March 5, 1928 and the Bank is now going to recall it, so they advised me, in March 1930. You definitely assured us that this mortgage was not due for about two and one half years. We had several talks on this particular $2000 note and you stated that if the time limit was otherwise than what you represented it to be, you would arrange to take it up and carry it. I would like to know from you at this time, just what you propose to do with it. . . . "

To the above letter said plaintiff replied on August 16th: "Now in regard to the $2000 Trust Deed. At the time I bought the place there was a first and 2nd Trust Deed on the place. In April 1927 I paid off one of the papers and paid the other one down to $2000. I surely was under the impression that the other paper was to run to March 1931. I would like to ask if the Bank has refused to renew this loan? I would rather have them carry it if it can be arranged. I can't see where you have any worry on this as I would have

to protect myself on it anyway. I would rather the Bank would carry it if it is possible. And no doubt they will if the place is kept in good shape. . . . ''

Thereafter, on October 23d and November 1, 1929, the bank called upon said defendant for payments on said note. On November 5th said defendant wrote them that he was unable to take it up and asked if they would consider renewing it. On November 7th the bank replied that it was unable to accommodate him; that possibly he was maintaining an account with some other bank through which he could arrange a renewal. Said defendant testified that he had no way of securing renewal of the loan, or of paying it. At this time also, to wit: on November 5th defendant corresponded with Mr. Heyd, the real estate agent who had represented all parties to the exchange, regarding the misrepresentation and the action of the bank, but Mr. Heyd merely referred the matter back to plaintiff. Finally, on November 12th, defendants gave plaintiffs written notice of rescission of the entire contract and transaction, with offer on their part to restore everything of value received by them, based upon six charges of fraud and misrepresentation, one of which was the misrepresentation hereinabove discussed. Thereafter the matter was placed by the parties in the hands of their respective counsel.

The bank proceeded to foreclose said $2,000 encumbrance on the ranch and at foreclosure sale on May 13, 1930, it sold the ranch back to plaintiffs for the exact amount of said indebtedness. It will be noted, at this juncture plaintiffs, by the expenditure of said additional $2,000, became repossessed of their valuable ranch and also retained the money and property conveyed to them by defendants, together with defendants' said note for $8,750, on which they elected to press payment by the bringing of this action. In the light of these circumstances, and the evidence that the maturity date of the note was misrepresented, can there be any doubt that the misrepresentation was material and was relied upon by defendants? (*K. Lundeen Corp.* v. *Barlow,* 120 Cal. App. 391 [7 Pac. (2d) 1102]; 66 Cor. Jur., sec. 135, p. 586.)

Plaintiffs assert that defendants are not entitled to rescission because they did not rely upon the misrepresentation, if

any. But the basis for this claim is merely conflicting evidence which was resolved by the trial court in favor of defendants. In other words, plaintiffs and said real estate agent testified that during a period of about one month following execution of the original agreement, but prior to consummation of the exchange, while title reports were being secured, documents prepared for signature, etc., defendants saw title papers which set forth the date of the $2,000 encumbrance, thus putting them on notice as to its maturity date; furthermore, that defendant T. J. Finneran accompanied said agent to the bank and not only saw the note but appended his signature thereto. But said defendant absolutely denied visiting the bank with said agent or seeing the title report or the note prior to consummation of the transaction and recordation of the instruments evidencing it. Said defendant admitted that apparently his signature was on the note and testified that in August, 1929, when he visited the bank to learn the status of the loan, the bank clerk handed him a card or paper to sign, which he believed was an address card for mailing purposes, but which evidently was said note. The evidence relied upon by the trial court as a basis for its findings is amply sufficient.

■ Appellants' second point is that if ground of rescission originally existed, it was lost by failure to act promptly and by ratification and waiver. So far as the record shows this point is urged for the first time on the appeal. We need not decide whether this is permissible, as in any event there is nothing in the record which would sustain a reversal of the judgment on these grounds. Defendants not only protested promptly upon discovery of the misrepresentation, but immediately started corresponding with plaintiffs and others to see if the situation could be remedied. Finding that it could not be, they promptly rescinded. They could not be charged with unreasonable delay during the period of their negotiations for adjustment, nor with waiver of the fraud or ratification of the transaction because, during said period, they made payments of interest on both the $2,000 note and their $8,750 note. (*Gist* v. *Security T. & Sav. Bank*, 218 Cal. 581 [24 Pac. (2d) 153].) It was during this period that plaintiff George A. Davison wrote: ''I would like to ask if the Bank

has refused to renew this loan? I would rather have them carry it if it can be arranged. I can't see where you have any worry on this as I would have to protect myself on it anyway. I would rather the bank would carry it if it is possible. . . . "

The third contention that it was prejudicial error for the court to permit defendant T. J. Finneran to testify that he handled just one other real estate transaction prior to this one, and that through a real estate agent, scarcely merits comment. Obviously, the error, if any, was not prejudicial. No further discussion is required.

The judgment is affirmed.

Shenk, J., Curtis, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.